[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is in action brought by the plaintiff wife against the defendant husband for dissolution of their marriage on the ground of irretrievable breakdown. The parties were mated on July 17, 1982 in Bridgeport, CT. There are three minor children issue of the marriage: Fabrizio Trombetta, born September 15, 1985, Marco Trombetta, born February 16, 1987, and Raffaela Trombetta, born March 16, 1996.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders and trial memoranda. Based upon the credible evidence, the court makes the following findings. This action was commenced on September 15, 2000. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The plaintiff is 39 years old and generally in good health, with the exception of postsurgical treatment she is currently receiving for a carpal tunnel condition. Although presently receiving workers' compensation benefits, she will be able to return to work shortly with no earning capacity impairment. She is employed as a bond administrator for an insurance agency, with a salary of $39,000.00 per year. In addition to her normal full time job, she was generally responsible for cooking, cleaning, laundry, household chores and transportation, when necessary, for the minor children to and from school activities.
The defendant husband is generally in good health. He suffers from some hearing loss, and has been assigned light duty work by his employer as a CT Page 2066 result of a hernia operation at some point in 2001. He works as a general maintenance employee for Westfield Corporation in Trumbull and earns approximately $33,000 per year. In addition to this work, on occasion, he has undertaken a variety of plumbing, electrical, maintenance, carpentry work and other construction work. He has been compensated for some of these jobs, earning some $4,000.00 to $5,000.00 per year, and some of this work has been for friends and without compensation.
Both the plaintiff and defendant attended high school, the defendant in Italy and the plaintiff in the United States.
Prior to the defendant's employment with Westfield, he had worked for Wiretek for approximately 10 years. This work qualified him for pension benefits, however the company's financial difficulties make doubtful whether any such are or will be available.
In 1984, the parties purchased a home at 214 Burnsford Avenue, in Bridgeport. Prior to moving to the United States, the defendant had worked in Canada. The down payment for the house came principally from the defendant's earnings in Canada and from wedding gifts. The home was a small Cape Cod and in 1987, with the assistance of friends and other craftsmen, the defendant began converting it to a colonial style home and the construction of a large addition. This work was completed in 1990, and the house now has 5 bedrooms, 3 full bathrooms, 2 family rooms, 2 kitchens, living room and dining room.
The defendant owns a parcel of land in Italy, purchased when he was 18 years of age for $160.00 Canadian. There are no buildings on this property and the property is cared for by the defendant's sister who harvests olives grown on it. No credible evidence was presented as to the current value of the property in Italy, and the plaintiff has indicated, in her memorandum of January 28, 2002, that she makes no claim to this property.
Both parties agree that the fair market value of the 214 Burnsford Avenue, Bridgeport, property is $175,000.00. The parties arranged a line of credit/home equity loan secured by a mortgage. Using borrowed funds against this line, the defendant purchased a Dodge Dakota pickup truck and payments were made on outstanding credit card debt.
It would serve no useful purpose to recount the allegations, charges, and evidence as to the cause for the breakdown of this marriage. The interests and attitudes of the parties changed over the 19 years of this marriage and both parties bear some responsibility for the breakup of this marriage. CT Page 2067
The parties have reached an agreement on issues relating to the care, custody and parenting of the children. In accordance with the agreement, submitted at trial, the parties are awarded joint legal custody of the minor children and the plaintiff shall have physical custody of the minor children and primary decision making authority. The husband shall have liberal, flexible and reasonable visitation.
The court has carefully considered the statutory criteria and the applicable case law in reaching the decision reflected in the orders that follow:
 1. The marriage of the parties having broken down irretrievably is hereby dissolved.
 2. Custody of the three minor children shall be as herein before set forth. The parties shall claim the children as tax exemptions for federal and state filing purposes on a yearly alternating basis commencing with the wife for the calendar year 2002, the husband for the year 2003 and alternating thereafter. The exemptions shall be claimed for so long as permitted by law.
 3. Child support. The husband shall pay $186.00 per week to the wife as child support. This amount is in accordance with the recommendations of the child support guidelines. Child support shall be reduced in accordance with the child support guidelines in effect as each child reaches his and/or her majority.
 4. Alimony — Each party shall pay the other the sum of $1.00 per year alimony for a period of 10 years from the date of this decision. The term of the alimony shall be non-modifable.
5. Personal property — The parties have divided their personal property to their mutual satisfaction. All property in the possession of each party shall remain the property of that person. The wife shall retain the 1993 Dodge Caravan free and clear of any claim by the husband. The husband shall retain the Dodge Dakota pickup truck free and clear of any claim by the wife. The parties shall execute and exchange any and all required documents to place title to said CT Page 2068 vehicles aforesaid. The wife shall also retain her shares of Home Depot stock.
 6. Medical Insurance — the husband shall provide medical insurance for the minor children. Parties shall pay un-reimbursable and/or non-covered medical and dental expenses incurred on behalf of the minor children in accordance with the allocation in effect pursuant to the Connecticut Child Support Guidelines. At the present time the parties shall divide said expenses with the wife paying 70% and the husband paying 30% in accordance with the guideline recommendations.
 7. Wife's Compensation Claim — the wife shall retain her workers compensation claim and any specific award free and clear from any claim by the husband.
 8. Real Estate in Italy — the husband shall retain title to the real estate in Italy free and clear of any claim by the wife.
9. Real Estate — 214 Burnsford Avenue, Bridgeport, CT —
a) The parties shall immediately list the house for sale. Upon the sale, after payment of conveyance taxes, the Hudson home equity/line of credit secured by a mortgage and the usual and standard closing costs and adjustments, and reimbursement to the defendant for any costs of materials for repairs as per b. infra, the net proceeds shall be distributed as follows: To the wife plaintiff — one half of the net proceeds and to the husband defendant — one half of the net proceeds less the amount necessary to pay off the Hudson line of credit/home equity, which shall be paid at the closing. The parties shall cooperate on all aspects of said sale including, but not limited to the selecting of a broker, setting of a listing price, disclosing of all offers of sale, presenting counteroffers and accepting terms of sale. The court retains jurisdiction over any and all issues which may arise concerning the sale of the marital residence including but not limited the establishment of a CT Page 2069 listing price, terms of the listing and each party's compliance with a listing agreement and acceptance of offers of sale.
 b) From the date of this decision, neither party shall borrow any additional amounts on the existing line of credit/home equity loan. Both parties shall vacate the premises on or before the date of closing. Until the date of the closing, the plaintiff wife shall be responsible for payment of the utilities, insurance, and real estate taxes and the husband shall be responsible for required interest payments on the line of credit, for repairs, and, for maintenance. Items for maintenance and/or repairs in excess of $250.00 shall be shared equally by the parties. The husband may perform maintenance and repairs and shall receive reimbursement of the costs of materials as per subparagraph a. supra.
 c) The plaintiff shall have the option of purchasing the defendant's interest, and aborting the sale of the property, by payment to the defendant of $68,000.00, by bank or certified check, and by refinance of the existing line of credit/home equity credit line in her name alone on or before 90 days after the filing of this decision. The court shall reserve jurisdiction to determine any issues pertaining to the option, sale and transfer of the property. In the event that the plaintiff exercises option, and upon payment of said $68,000.00 and refinance as provided, the defendant shall quitclaim his interest in said property to the plaintiff. Thereafter, the plaintiff shall be solely responsible for, and shall pay, any mortgage and/or line of credit, real estate taxes, home owners insurance, and all of the debts and costs associated with the property as they exist on or become due from or after the time of closing and, except as otherwise provided herein, she shall hold the plaintiff harmless and indemnify him thereon from any claims that might arise as a result of the parties joint ownership of the property.
10. Pension/401(k) — the amount of the pensions CT Page 2070 and 401(k) accounts of the parties shall be combined and divided into equal shares, one share for each party, with the execution of a QDRO, if required. The parties shall equally bear the cost for preparation of the QDRO.
 11. The wife shall be responsible for the payment of the Fleet and MBNA charge card accounts. The husband shall be responsible for the payment of the Hudson Bank charge card account. The plaintiff shall be responsible for payment of $1,000 toward the outstanding balance on the People's Bank charge card account and the defendant for the remaining balance. The plaintiff shall pay said amount to the defendant at the closing of sale of 214 Burnsford Avenue property, if said property is sold as per #9a supra, or at the time of delivery of the quitclaim deed as provided in paragraph 9c supra.
 12. Arrearage — the court finds the defendant in arrears in the amount of $3,721.16 for failure to make payments as required by pendente lite orders, $930 support arrearage plus $2,791.16 household expense arrearage. The defendant is ordered to pay said arrearages by payments of $60.00 per week beginning two weeks from the date of this order until said amount is paid in full.
 13. Payment of alimony and support shall be by contingent wage withholding.
 14. Bank Accounts — the parties shall retain sole ownership of the accounts listed on their financial affidavits free and clear of any claim by the other.
 15. Liabilities — except as otherwise provided herein, each party shall retain sole responsibility for repayment of the debts listed on each of their financial affidavits.
16. Counsel fees — each party shall be solely responsible for the payment of their attorney's fees and for any and all costs that are incidental to the prosecution of this matter. CT Page 2071
HILLER, J.